# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

**UNITED STATES OF AMERICA**

v.                                           **Case No.: 8:11-CR-356-T-30EAJ**

**DERRICK SPANN**

_____/

## REPORT AND RECOMMENDATION

Before the court is Defendant's **Motion to Suppress Miranda Violation** (Dkt. 69) and the United States' **Response in Opposition** (Dkt.87).[1] Following an evidentiary hearing, the undersigned recommends that the motion to suppress be denied.

## Findings of Fact

The following facts are established by a preponderance of credible evidence:

1. On June 5, 2011, between 2:00 p.m. and 3:00 p.m., Detective Jamie Lynn Pope ("Pope") of the Tampa Police Department and Detective Timothy Connolly ("Connolly") of the Pinellas County Sheriff's Office ("PCSO"), among other law enforcement, placed Defendant under arrest at Tampa International Airport on federal drug charges.

2. While officers escorted Defendant to an airport holding cell, Defendant asked for the reason for the arrest and whether the officers were arresting him on state or federal charges. Connolly replied that Defendant was being arrested on federal charges. Defendant indicated that he wanted to cooperate.

3. Approximately fifteen minutes later, Connolly and Agent Jeffrey McConaughey ("McConaughey") of the Drug Enforcement Administration ("DEA") escorted Defendant

---

[1] The motion has been referred to the undersigned for a report and recommendation (Dkt. 69). See 28 U.S.C. § 636(b); Local Rules 6.01(b) and (c), M.D. Fla.

from the airport holding cell to a police cruiser outside the airport, which was driven by Detective Donald Wiwi ("Wiwi") of the PCSO. No interrogation occurred during this time.

4. Wiwi and Connolly transported Defendant in the police cruiser to a PCSO interrogation facility.

5. In the police cruiser, Defendant initiated contact and engaged in a casual conversation with Connolly and Wiwi. Defendant stated that he wanted to cooperate, speak with a case agent, know who was arresting him, and know what was going to happen. Wiwi responded that he and Connolly were transporting Defendant to the interrogation facility, Defendant was being arrested on federal narcotics charges, they were not the case agents, and Defendant would have a chance to speak with the case agent later. No interrogation occurred during this time.

6. After arriving at the interrogation facility, Connolly and Wiwi escorted Defendant inside the interrogation facility to an interview room.

7. Defendant's girlfriend, Nakesha Webb, waited in another interview room at the interrogation facility.

8. McConaughey advised Defendant of his Miranda rights prior to questioning.[2]

10. Shortly thereafter, Pope arrived at the interrogation facility. Before questioning Defendant, Pope confirmed with McConaughey that McConaughey had previously advised Defendant of his Miranda rights.

11. The officers interviewed Defendant for approximately one hour.

---

[2] Although Defendant testified that officers led Webb, who was crying, into the interview room prior to being advised of his Miranda rights, the court finds this testimony not credible.

12. During the interview, Defendant made several incriminating statements, including acknowledging investing $18,000 for one kilogram of cocaine and fifty-eight pounds of marijuana and remaining in contact with his partner Henry Morant, who transported the drugs from Texas to Florida. Defendant also disclosed previously conducting numerous transactions of this same nature and utilizing the various postal services to mail kilogram quantities of cocaine and marijuana.

13. Defendant gave oral consent to search his Pinellas County, Florida and Houston, Texas residences.

14. Near the end of the interview, officers escorted Webb into the interrogation room and permitted her to speak with Defendant. While saying goodbye to Defendant, Webb became upset.

15. On June 6, 2011, Special Agent Russell Baer ("Baer") of the DEA provided Defendant with a written consent-to-search form. Defendant indicated a desire to cooperate. Baer reviewed the form with Defendant, and explained to Defendant that he had an absolute right to refuse to consent. Defendant signed the written consent-to-search form for his Houston, Texas residence (Govt's Ex. 1).

## Conclusions of Law

Defendant alleges that: (1) his waiver of his Miranda rights was invalid because it was obtained through intimidation and coercion; and (2) his post-Miranda confession at the interrogation facility is inadmissible because it was obtained using Defendant's prior incriminating statements obtained in violation of his Miranda rights. The Government responds that Defendant indicated that he wished to cooperate with the investigation, there is no indication that Defendant's waiver was

caused by coercion or intimidation, and law enforcement did not interrogate Defendant before advising Defendant of his Miranda rights.

**1.      Defendant's Waiver of His Miranda Rights Was Valid**

Before questioning a person who has been taken into police custody, law enforcement must inform the person of: (1) the right to remain silent; (2) the possibility that the person's statements could later be used as evidence; and (3) the right to the presence of retained or appointed counsel. Miranda v. Arizona, 384 U.S. 436, 444 (1966).

Nonetheless, a suspect "may waive effectuation of these rights, provided the waiver is made voluntarily, knowingly and intelligently." Id. at 444. In assessing the validity of such a waiver, a court must undertake the following two-part inquiry:

> First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception. Second, the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it. Only if the "totality of the circumstances surrounding the interrogation" reveal both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the Miranda rights have been waived.

Moran v. Burbine, 475 U.S. 412, 421 (1986) (citations omitted); see also Arizona v. Fulminante, 499 U.S. 279, 286 & n.2 (1991) (identifying some of the factors a court may consider in analyzing the totality of the circumstances, including a defendant's age, education, and intelligence). The prosecution must establish the defendant's waiver of Miranda rights by a preponderance of the evidence. Colorado v. Connelly, 479 U.S. 157, 168 (1986).

Defendant alleges that at the interrogation facility, but before being advised of his Miranda rights, officers used Defendant's girlfriend to coerce Defendant into making incriminating statements. However, the court finds Defendant's testimony regarding the encounter with his

4

girlfriend before being advised of his Miranda rights not credible. Notwithstanding, Defendant repeatedly reflected a desire to cooperate before entering the interrogation facility. Any interaction between the officers and Defendant's girlfriend in Defendant's presence did not coerce Defendant's incriminating statements. Defendant's contention that law enforcement threatened to obtain search warrants for Defendant's residences and threatened to press additional charges is also without merit. Defendant's waiver of his Miranda rights was valid.

**2.    Defendant's Post-Miranda Confession Is Admissible**

In addition to arguing that his waiver of Miranda rights was invalid, Defendant challenges the admissibility of his post-Miranda confession at the interrogation facility on the basis that it was elicited using Defendant's previous incriminating statements. Defendant contends that the officers obtained his previous incriminating statements in violation of his Miranda rights by interrogating Defendant during the transport from the airport to the interrogation facility, and officers failed to take any curative measures that rendered the post-Miranda confession admissible.

However, the officers did not interrogate Defendant until after McConaughey properly advised Defendant of his Miranda rights at the interrogation facility. Any conversation that occurred prior to that time was not in the nature of interrogation. Similarly, Defendant did not make any incriminating statements prior to being advised of his Miranda rights.[3] Therefore, the officers could not have used these alleged previous incriminating statements to elicit Defendant's post-Miranda confession. Defendant's post-Miranda confession is admissible.

## Conclusion

In light of the totality of the circumstances, law enforcement lawfully obtained Defendant's

---

[3] Even Defendant testified as to this fact.

5

post-<u>Miranda</u> statements at the interrogation facility.

Accordingly, and upon consideration, it is **RECOMMENDED** that:

(1) Defendant's Motion to Suppress Miranda Violation (Dkt. 69) be **DENIED**.

**Date: September 30, 2011**

ELIZABETH A JENKINS
United States Magistrate Judge

## NOTICE TO PARTIES

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of this service shall bar an aggrieved party from attacking the factual findings on appeal. See 28 U.S.C. § 636(b)(1).

**Any party objecting to the report and recommendation shall file a copy of the transcript of the hearing on the motion to suppress.**

Copies to:
Counsel of Record
District Judge