UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**UNITED STATES OF AMERICA**

v.                                                                    Case No.8:11-cr-356-T-30EAJ

**VALARIAN J. BROWN**
_____/

### ORDER

This cause comes on for consideration of Defendant's Pro Se Motion for a New Trial Pursuant to Rule 33 of the Federal Rules of Criminal Procedure (D-324), the Government's response in opposition thereto (D-326), Defendant's reply (D-329), the Government's Sur Reply (D-334), filed at the Court's direction, and Defendant's Reply to the Government's Sur Reply (D-335).

Defendant and three co-defendants, Antonio Smith (Defendant's cousin), Derrick Spann (Smith's brother and Defendant's cousin), and Bibal Francis, were charged in a three-count Indictment with conspiracy to possess with the intent to distribute five (5) kilograms or more of a mixture of substance containing a detectable amount of cocaine, conspiracy to possess with the intent to distribute a mixture or substance containing a detectable amount of marijuana, and possession with the intent to distribute 500 grams or more of a mixture or substance containing a detectable amount of cocaine in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(ii), (b)(1)(B)(ii), (b)(1)(C), and 846.  The drug conspiracy charged in the Indictment spanned from 2003 to June 2011, involved various co-conspirators not charged in the Indictment, and included the transport of large quantities of cocaine and marijuana from Texas

to Florida, where Defendant and his co-conspirators would further distribute the drugs. Initially, the drugs were transported via truck. In 2010, the conspirators started shipping the drugs to Florida via mail. In 2011, they returned to transporting the drugs to Florida by truck.

Defendant and others were arrested on June 3, 2011, in the area where a controlled delivery was scheduled to take place. On June 4, 2011, law enforcement executed a search warrant on a stash house controlled by co-defendant Antonio Smith. At that time, law enforcement found a kilogram cocaine wrapper in the trash.

All three of Defendant's co-defendants pled guilty prior to trial. Defendant's trial commenced in December 2011. Two of the co-defendants, Spann and Francis, testified against Defendant. The Government also presented testimony from various other co-conspirators who were involved in the conspiracy with Defendant. A jury convicted Defendant of all three counts charged in the Indictment. The Court imposed a mandatory life sentence as to Count One, 30 years as to Count Two, and 364 months as to Count Three. On March 19, 2013, the Eleventh Circuit affirmed Defendant's convictions and sentences. United States v. Brown, 513 Fed. Appx. 830 (11th Cir. 2013) (per curiam). On October 7, 2013, the Supreme Court denied a petition for writ of certiorari. Brown v. United States, 134 S.Ct. 206 (2013).

**I.   Motion for New Trial Based on Brady Violation**

Defendant requests a new trial based on a Brady v. Maryland, 373 U.S. 83 (1963), claim of newly discovered evidence. Defendant

contends that he learned after trial, but prior to his sentencing, that several of the law enforcement officers who testified at Defendant's trial were investigated by the Pinellas County Sheriff's Office for acts of misconduct such as falsifying search and arrest warrant affidavits, fabricating evidence, and coercing cooperating witnesses to make false or misleading statements and to testify falsely in other cases. According to Defendant, the internal affairs investigation, which concluded some time after the trial, ultimately resulted in the resignation or dismissal of some of the officers.

Defendant argues that the Government was aware of the investigation into the officers' conduct but failed to disclose the information to defense counsel. Defendant contends that had he known of the ongoing investigation into the officers' conduct, it would have altered his trial strategy and "would have presented numerous different variations on how the defense prepared for trial, if the case went to trial at all." (D-324, p. 6.)

The Government responds that, at some time before trial, it became aware of an internal affairs investigation of Pinellas County Sheriff's Detective Jeffrey McConaughey, a Drug Enforcement Administration Task Force Agent who was the case agent on the 2011 portion of the investigation in this case. According to the Government, the Sheriff's Office would not disclose the nature of the internal affairs investigation of McConaughey as disclosure was prohibited under Florida law. After the completion of the trial, the Government learned that the internal affairs investigation

involved McConaughey not paying a confidential informant $200 but documenting that he did so. According to the Government, McConaughey was not criminally charged and resigned in 2012 before any sanctions were levied against him.

The Government argues that its failure to advise Defendant about the internal affairs investigation involving McConaughey does not entitle Defendant to a new trial. The Government points out that it did not call McConaughey as a witness at trial and instead, Detective Levi Cabarras, a DEA Task Force Agent who led the 2005 portion of the investigation, became the acting case agent. The Government argues that the evidence regarding the internal affairs investigation is irrelevant and merely impeaching and that Defendant fails to show that there is a reasonable probability the outcome of the case would have been different had he known about the investigation.

In his traverse brief, Defendant disputes that the evidence is merely impeachment evidence. He further argues that law enforcement Officers Jason Bahret, Michael Papamichael, and Brian Beery all testified at trial and were under the same internal affairs investigation. He suggests that his co-Defendants would not have pled guilty and testified against him had they been aware of the internal affairs investigation regarding the officers. Defendant also requests appointment of counsel.

The Government states in its sur reply that, based on information from Captain Mark Baughman, the supervisor for the Pinellas County Sheriff's Office Narcotics Unit, the investigation

into Jason Bahret and Michael Papamichael did not begin until after the completion of Defendant's trial, and, as such, there was nothing to disclose to Defendant as to these officers. It further points out that Papamichael was not a witness at trial.

The Government states it is unaware of any person named "Brian Beery." It states that Bernard Berry with the Tampa Police Department was listed on its witness list (see D-218), but that there is no evidence that he was the target of any internal affairs investigation, let alone one by an agency where he is not employed. Detective Berry did not testify at trial.

Pursuant to Brady, "the prosecution is required to disclose to the defense evidence favorable to the accused if the evidence is material to guilt or punishment." United States v. Starrett, 55 F.3d 1525, 1555 (11th Cir. 1995) (per curiam). To obtain a new trial on the basis of a Brady claim of newly discovered evidence, a defendant must show that: (1) the government possessed evidence favorable to him; (2) the defendant did not possess the evidence and could not have discovered the evidence with reasonable diligence; (3) the prosecution suppressed the favorable evidence; and (4) had the evidence been revealed to the defendant, there is a reasonable probability that the outcome of the proceedings would have been different.[1] United States v. Vallejo, 297 F.3d 1154, 1164 (11th

---

[1] As Defendant asserts new discovered evidence based on a Brady violation, the Court utilizes the Brady standard instead of the standard for a Rule 33 motion based on newly discovered evidence. United States v. Cook, 170 Fed. Appx. 639, at 640 (11th Cir. 2006) (per curiam); accord United States v. Snipes, 751 F.Supp. 2d 1279 (M.D. Fla. 2010), aff'd by

Cir. 2002). A defendant must meet all the elements to be entitled to a new trial.

Defendant fails to meet this test with regard to Jason Bahret, Michael Papamichael, Brian Beery, and Bernard Berry. A review of the trial transcript demonstrates that neither Michael Papamichael, Brian Beery, nor Bernard Berry were testifying witnesses. In fact, there is no evidence that Brian Beery was in any way involved in the investigation leading up to the prosecution of Defendant. Furthermore, the Government did not possess or suppress any <u>Brady</u> evidence relating to Papamichael or Bernard Berry. The investigation into Papamichael did not commence until <u>after</u> the conclusion of Defendant's trial. Finally, there is no evidence that Bernard Berry, who is not employed by the Pinellas County Sheriff's Office, was ever under any investigation.

While Jason Bahret testified at trial, Defendant has not presented any actual evidence that Bahret was under investigation prior to the trial. To the contrary, the Government states that the internal affairs investigation related to Bahret did not commence until after the trial in this case. As such, the Government did not either possess or suppress any exculpatory evidence as it relates to Bahret.

With regard to McConaughey, the Government concedes that

---

440 F.Appx. 709 (11th Cir. 2011).

Defendant has met the first, second, and third prongs of the Brady test.[2] In that regard, the Government admits that it was aware, prior to trial, that McConaughey was under investigation and that said evidence would have been favorable to Defendant. Further, Defendant did not possess the evidence nor could he have obtained it with any reasonable diligence. Additionally, the Government suppressed the favorable evidence until the conclusion of the trial.

Thus, the sole issue is whether there is a reasonable probability that the outcome would have been different had the Government disclosed to Defendant prior to trial the evidence relating to the investigation of McConaughey. A "reasonable probability" is "a probability sufficient to undermine confidence in the outcome." United States v. Bagley, 473 U.S. 667, 682, 105 S.Ct. 3375, 3383, 87 Led.2d. 481 (1985). "The mere possibility that an item of undisclosed information might have helped the defense or might have affected the outcome of the trial does not establish materiality in the constitutional sense." United States v. Bodison, 523 Fed. Appx. 601, 608 (11th Cir. 2013) (per curiam) (citing United States v. Agurs, 427 U.S. 97, 109-10, 96 S.Ct. 2392, 2400, 49

---

[2] The Court notes that, while the Government concedes Defendant has met three prongs of the Brady test, there is non-binding authority supporting an argument that the Government had no obligation to disclose the internal affairs investigation to Defendant. In United States v. Ballesteros, No. 11-20698-CR, 2012 WL 3639059, at *3-4 (S.D. Fla Aug. 24, 2012), the court found that the government's failure to disclose the fact that an officer was charged with official misconduct and grand theft in handling an unrelated case did not entitle the defendant to a new trial. The court explained that the government had no obligation to disclose the evidence because the officer was never called as a witness in the case. Id.

Case 8:11-cr-00356-JSM-AAS   Document 336   Filed 01/09/14   Page 8 of 13 PageID 1868

L.Ed.2d 342 (1976)).

The Court finds that Defendant has failed to meet this prong of the Brady test.  Specifically, Defendant has not shown that the evidence of the internal investigation into McConaughey "would have "put the whole case in such a different light as to undermine confidence in the verdict." Kyles v. Whitley, 514 U.S. 419, 434–37, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995) (footnote omitted).  First, the information was not material as McConaughey did not testify at trial.  See United States v. Haskell, 468 F.3d 1064, 1075 (8th Cir. 2006) (undisclosed impeachment evidence relating to an inmate was not material and would not have changed how the government's case would have looked where the inmate did not testify at trial); see also United States v. Ballesteros, No. 11-20698-CR, 2012 WL 3639059, at *3-4 (S.D. Fla Aug. 24, 2012) (the court found that the government's failure to disclose the fact that an officer was charged with official misconduct and grand theft in handling an unrelated case did not entitle the defendant to a new trial because the government had no obligation to disclose the evidence because the officer was never called as a witness in the case).

Second, there was ample evidence against Defendant to support the jury's verdict, including testimony from various co-conspirators.  For instance, David Thorbs testified that he began making drug runs to transport cocaine from Texas to Florida for Defendant and co-defendant Smith in 2004.  He explained that in 2005, he and Thomas Rolle, Defendant's uncle, made two drug runs.  However, on the second trip in March 2005, they were arrested.

Thorbs was convicted and served 87 months and was no longer incarcerated at the time of Defendant's trial.

Thomas Rolle, Defendant's uncle, testified that Defendant asked him to take two trips from St. Petersburg to Houston and back with Thorbs. During the second trip, they were stopped while returning to St. Petersburg with the drugs and arrested by law enforcement. Rolle was serving a 20-year sentence at the time of Defendant's trial.

Tayari Cohen, Thorbs' stepson, testified that in 2005 Thorbs was transporting drugs from Texas to Jacksonville and St. Petersburg for Defendant and co-defendant Smith. Cohen admitted to purchasing marijuana and cocaine from Defendant from 2005 until May 2007. He estimated having 20 to 25 transactions with Defendant.

Joseph Pittman testified that once he waited at a location for a postal worker to deliver a package and then he brought the package to Bibal Francis' house and left it in the car as directed by Defendant. In May 2011, Pittman drove to Ocala to meet Henry Morant to pick up a package for co-Defendant Smith. Pittman suspected that the package, which he brought to Smith, contained drugs.

Pittman testified that on June 3, 2011, Defendant told him they were going to meet some strippers in Tampa. Pittman recalled that Defendant used Pittman's phone on several occasions that day. Pittman overheard part of one of Defendant's conversations and assumed Defendant was planning a drug deal. After confronting Defendant, Defendant said he was going to pick up some weed and a "brick." Pittman was arrested shortly thereafter.

Co-Defendants Spann and Francis both testified extensively about the drug activities they were involved in with Defendant and co-defendant Smith. Co-conspirator Henry Morant testified regarding he and Spann mailing marijuana and eventually cocaine from Texas to the St. Petersburg and Tampa areas. He explained that Defendant, Francis and Smith were "working on the Florida end." He also testified that on 20 to 30 occasions he drove drugs from Texas to Florida to deliver them to Defendant and Smith.

While Defendant argues that, had the Government disclosed the internal affairs investigation to the defense, "it is likely that some, if not all, of Brown's co-defendants would not have agreed to cooperate" (D-329, p. 4), his claim is mere speculation. Furthermore, the testimony of co-conspirators Thorbs, Rolle, and Cohen related to times during the conspiracy that pre-dated Detective McConaughey's involvement. In light of the evidence presented at trial, only some of which is detailed above, the Court finds that Defendant has not shown a reasonable probability that the outcome of the trial would have been different had the Government disclosed the internal affairs investigation of McConaughey to Defendant. Defendant therefore is not entitled to a new trial.

**II. Defendant's Reply to the Government's Sur Reply Claiming Prosecutorial Misconduct**

On December 13, 2013, Defendant filed a reply to the Government's sur reply. (D-335.) This reply was filed without permission of the Court in violation of Local Rule 3.01(c), M.D. Fla., and is due to be stricken.

Even if the filing were not stricken, Defendant would not be

entitled to relief. Defendant seeks to add a claim of prosecutorial misconduct to his original motion for new trial. Defendant contends that the Government knowingly presented perjured testimony at his trial. Specifically, Defendant asserts that the Government allowed witness Henry Morant to testify falsely. Defendant points out that when Morant debriefed to law enforcement he admitted that he had never met Defendant face to face and would not be able to recognize him from a photograph. (D-335-1, p. 9, 16.) However, at trial he testified that Derrick Spann introduced him to Defendant at a park. (D-27, p. 112-13.) Defendant speculates that Morant testified falsely at the direction of McConaughey. Defendant, however, presents no evidence supporting this claim.

In any event, this claim is untimely, and, as such, Defendant is not entitled to a new trial. Pursuant to Rule 33(b)(2) Fed.R.Crim.P., a claim based on any ground other than newly discovered evidence must be filed within 14 days after the verdict. That Morant's testimony was in contradiction to the statements he made at his debriefing is not newly discovered evidence as it was known to Defendant at the time of trial. The trial transcript demonstrates that Defendant's trial counsel was aware of Morant's debriefing. Defense counsel attempted to impeach Morant's credibility when he asked him about his interview with law enforcement and stated, "they asked you specifically, did they not, "Have you ever met face to face with 'Cuz,'" and you told them that you've never met face to face with 'Cuz;' isn't that right?" (D-279, p. 114, l. 22-24.) Morant responded that he didn't remember

saying that. (Id. at l. 24.) Defense counsel continued, "And you also told them, did you not, that you couldn't recognize 'Cuz' from a photograph; is that right?" (Id. at p. 115, l. 1-2.) Morant responded, "I don't remember saying that either." (Id. at l. 3.) The Government objected when defense counsel asked Morant, "You don't remember saying, "Listen, I'm not going to lie to you. I couldn't identify 'Cuz' because I've never met him face to face"? You don't remember saying that?" (Id. at l. 4-8.) The Court overruled that objection and Morant answered, "I don't remember saying that." (Id. at l. 10-12.) As Defendant's claim is not based on evidence he discovered after trial, and his request for new trial based on prosecutorial misconduct is untimely, he is not entitled to relief.

### III. Defendant's Request for Appointment of Counsel

Defendant requests appointment of counsel. However, the right to counsel does not attach to a post-appeal Rule 33 motion. United States v. Berger, 375 F.3d 1223, 1226 (11th Cir. 2004) (per curiam). Appointment of counsel in such a matter is left to the district court's discretion. Id. The Court does not find that the interests of justice require appointment of counsel in this matter.

IT is therefore ORDERED that:

1) Defendant's Pro Se Motion for a New Trial Pursuant to Rule 33 of the Federal Rules of Criminal Procedure (D-324) is DENIED.

2) Defendant's Reply to the Government's Sur Reply (D-335) is STRICKEN.

3) Defendant's request for appointment of counsel is DENIED.

DONE AND ORDERED in Tampa, Florida, this January 9, 2014.

_____
WILLIAM J. CASTAGNA
SENIOR UNITED STATES DISTRICT JUDGE